UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BULGARTABAC HOLDING AD.,<br><br>Plaintiff,<br><br>- against -<br><br>THE REPUBLIC OF IRAQ, NATIONAL TOBACCO STATE ENTERPRISE, THE CENTRAL BANK OF IRAQ AND RAFIDAIN BANK,<br><br>Defendants. | 08 Civ. 6502 (RJH)<br><br>**MEMORANDUM OPINION AND ORDER** |

Richard J. Holwell, District Judge:

      This case involves a contract dispute between Bulgartabac Holding AD ("Bulgartabac") and the Republic of Iraq and certain state entities (collectively, "Iraq"). On September 30, 2009, the Court issued an opinion and order [23] granting defendants' motion to dismiss on the grounds that this breach of contract action, brought some twenty years after the alleged breaches, was untimely. Plaintiff Bulgartabac moves for reconsideration or, failing that, for leave to amend its complaint. For the reasons discussed below, both motions are DENIED.

1

## BACKGROUND

The Court assumes familiarity with the factual background of this case as set forth in its prior opinion. Bulgartabac is the successor to a Bulgarian state-owned tobacco company. During the 1980s, Bulgartabac contracted to produce cigarettes for Iraq. The parties reached an agreement through a complicated series of interrelated documents. Bulgartabac alleges that it provided the cigarettes as required under the contract, but Iraq did not provide full payment. The first unpaid invoice is dated October 7, 1985. Bulgartabac sent its last invoice to Iraq on April 24, 1989.

On August 2, 1990, Iraq began its invasion of Kuwait. As a result, the United Nations imposed sanctions on Iraq on August 7, 1990. Bulgartabac demanded payment for its unpaid invoices (when it first did so is not alleged), but Iraq allegedly informed Bulgartabac that it would be unable to make payments as long as the nation was under sanctions. On May 22, 2004, the United Nations lifted sanctions on Iraq. Bulgartabac again attempted to collect payment on its outstanding invoices and began negotiations to receive payment. These negotiations were not successful. On July 22, 2008, Bulgartabac filed this suit.

Iraq moved to dismiss the complaint on the grounds that the Court lacked subject matter jurisdiction because Iraq, as a foreign government, was immune from suit under the Foreign Sovereign Immunity Act, 28 U.S.C. §§ 1330, 1602 *et seq.*, and on the grounds that the case was time-barred. Bulgartabac argued that Iraq was not immune from suit because its activities fell into an exception from immunity carved out by 23 U.S.C. § 1605(a)(2): Iraq had carried out "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." Bulgartabac argued that its complaint was not time-barred for two reasons. First, it argued that its contract

2

with Iraq required the parties to attempt to reach an amicable resolution before filing suit and that, as such, the statute of limitations did not begin to toll until 2007, when attempts at reaching an amicable resolution broke down. Bulgartabac read this requirement into a contractual clause that reads, "All disputes which may arise out of the present contract will be solved amicably." Second, Bulgartabac argued that Iraq should be equitably estopped from asserting a statue of limitations defense because it represented to Bulgartabac that the United Nations sanctions prevented it from making payments.  This Court held that it was not possible to determine as a matter of law whether Iraq was immune from suit based on the submissions, but held that Bulgartabac was time-barred from filing suit and, further, that Iraq was not equitably estopped from asserting this defense.  Bulgartabac asks the Court to reconsider its statute of limitations and equitable tolling rulings.

## STANDARD OF REVIEW

Under Local Civil Rule 6.3, reconsideration is appropriate if the Court overlooked controlling decisions or factual matters which, had they been considered, might reasonably have altered the result of the underlying decision. *E.g.*, *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009).  To that end, "[a]ny controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the Court in the underlying motion." *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258 (S.D.N.Y. 2009).  Further, "[a] motion for reconsideration 'is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Finkelstein v. Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007).

## DISCUSSION

Bulgartabac first asks the Court to reconsider its holding that the statute of limitations was not tolled for twenty years while the parties sought (but failed) to amicably resolve their dispute.  In support of its argument that the statute of limitations was tolled, Bulgartabac cites entirely new legal authorities that were neither cited nor discussed in its prior submissions.  This failure alone would lead the Court to deny plaintiff's motion.  But Bulgartabac's arguments are also substantively without merit.   Bulgartabac argues that a contractual provision calling for the amicable resolution of disputes is ambiguous as to whether it creates a condition precedent to the initiation of litigation, and, therefore, that the court should construe the contract only after hearing parol evidence.  (Pl.'s Mot. For Recons. 2.)  In support of this argument, Bulgartabac cites (for the first time) language in the Second Restatement of Contracts stating that "[n]o particular form of language is necessary to make an event a condition . . . ."  Restatement (2d) Contracts, § 226(a) (2009).  It argues that because no particular language is necessary to create an express condition precedent, the contractual clause at issue can be read as requiring the parties to pursue and fail to reach amicable resolution of disputes prior to seeking redress in court. This condition , according to plaintiff, was satisfied no earlier than November 2007, and the statute of limitations did not begin to run until this date.   Perforce, its action is timely.

In making this argument, Bulgartabac overlooks a considerable body of law stating that in New York, as in many other jurisdictions, conditions precedent are "not favored."  *Ginett v. Computer Task Group*, 962 F.2d 1085, 1099 (2d Cir. 1992); *see also Summit Petroleum Corp. v. Ingersoll-Rand Financial Corp.*, 909 F.2d 862, 866 (6th Cir. 1990); *Computer Systems of America, Inc. v. International Business Machines, Corp.*, 795 F.2d 1086, 1089 (1st Cir. 1986); *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1264 (9th Cir. 1982).  As the Second Circuit has

observed, under New York state law, "in the absence of unambiguous language, a condition will not be read into the agreement." *Ginett*, 962 F.2d at 1099-1100.

Furthermore, Bulgartabac cites no case in which language similar to that found in its contract with Iraq was construed as creating an express condition precedent, and the Court is aware of no such case. Bulgartabac (again for the first time) cites *Contracare, USA, Inc. v. Laboratories Contapharm*, 1986 WL 3504 (W.D.N.Y. March 20, 1986) for the proposition that an amicable resolution may be a condition precedent to litigation being commenced in a particular forum. The contractual provision at issue in that case stated in substance that "'[i]f no agreement is able to be arrived at through an arbitrator,' then recourse may be had to the Tribunal de Commerce."[1] Id. at *2. Although the contract also called for an amicable resolution, that provision was not in dispute. As for the arbitration clause, the language of the provision differed significantly from the provision in the instant case in that recourse to litigation was explicitly identified as a conditional right and evidenced by the use of an "if . . . then" construct.

By contrast, the court in *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D.Cal. 2002), cited in this Court's original opinion, interpreted an amicable resolution clause that did not contain the conditional language found in *Contracare*. The *Vogt-Nem* court noted the absence of such terms and declined to find that settlement negotiations were a condition precedent to the initiation of litigation. The contractual language in the present case is even less

---

[1] The original contract at issue was in French, and the parties disputed the proper translation, but the dispute is not material.

susceptible of being read as creating a condition precedent as the right to initiate suit is not even referenced, much less subject to any conditions.[2]

Although Bulgartabac has argued only that the amicable resolution clause reflects an agreement by the parties to create a condition precedent, that is, an express condition, it is true that a court may impose a constructive condition "to do justice." *Oppenheimer & Co. v. Oppenheim*, 660 N.E. 2d 415, 418 (N.Y. 1995) (citing Calamari and Perillo, Contracts § 11-8, at 444 [3d ed.]). The Second Restatement on Contracts provides this example of such a situation:

> A promises to make necessary interior repairs on a building that he has leased to B, but reserves no privilege of entering the building. B's giving reasonable notice to A of any necessary interior repairs of which A would otherwise be unaware is a condition of A's duty to make those repairs, although B is under no duty to give notice. (2d) Contracts, § 226(c) (2009)

As the *Oppenheimer* court stated, courts enforce constructive conditions differently than express promises. *Oppenheimer*, 660 N.E. 2d at 418. Where the parties have agreed to express conditions, courts must interpret them strictly, even if the conditions seem harsh in hindsight. *Id*. Constructive conditions are judicially created, so the courts have greater flexibility in tailoring constructive conditions to meet the ends of justice. *Id*.

Here, it could be argued that in order to give full effect to the amicable resolution clause, the court should impose a condition that the parties must attempt (but fail) to reach an amicable resolution prior to bringing suit. But a court will not impose a constructive condition where there is "no manifest equity to enforce, and no unequivocal acts of the parties which indicate that this promise would have been included in the contract, if attention had been called to it."

---

[2] The plaintiff contends that the *Vogt-Nem* court erroneously held that particular language was required to create a condition precedent. The Court does not read *Vogt-Nem* so broadly. While particular language is not required to establish a condition precedent, surely its absence is one indication that the parties did not intend to create an express condition.

*Robinson v. Hayes' Estate*, 207 A.D. 718, 722 (N.Y.A.D. 1924).  The amicable resolution clause in the present case appears to be merely aspirational, and the court, therefore, declines to read in an implied condition precedent.  *Id*. at 721.

Bulgartabac also asks the Court to reconsider its ruling that Iraq is not equitably estopped from asserting a statute of limitations defense.  Bulgartabac does not explain why it believes that the Court should reconsider its prior analysis on this point, and we see no reason to do so.

Finally, Bulgartabac asks leave to amend its complaint.  Where the court has already entered judgment, a party must seek to have the judgment vacated prior to seeking leave to amend.  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  Still, "in view of the provision in rule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id*. (internal citations omitted).  Although leave to amend is liberally granted, courts need not grant leave to amend when amendment would be futile.  *Id*.

Even if the Court were to grant Bulgartabac leave to amend, Bulgartabac's proposed amended complaint would not survive motion to dismiss.  Bulgartabac wishes to add allegations that

> [D]efendants failed to deny liability during the limitations period, or that defendants represented that the suspension of payment would be lifted after the expiration of the embargoes, and that, had defendants denied liability during the limitations period, or otherwise stated that defendants would not make payments under the agreements, plaintiff would have initiated litigation in response. (Pl.'s Mot. For Recons. 7.)

In its original pleading, Bulgartabac alleged that the Iraq Ministry of Foreign Economic Relations told Bulgartabac that "steps directed at an amicable resolution would commence upon

7

the lifting of the Embargo, and that payments due by Iraq under the Contracts were suspended as a result of the Embargo." (Compl. ¶ 40.) If the Court reads these two complaints together, Bulgartabac seems to contend that Iraq told Bulgartabac that the suspension of payments would be lifted when the Embargo was lifted and that an amicable resolution would then be reached. In light of the fact that Iraq had failed to pay invoices dating back to five years before the U.N. Embargo was imposed, the proposed complaint does not allege affirmative wrongdoing such as would estop a limitations defense. *See* Op. 18-20.

Indeed, even if the time during which Iraq was subject to U.N. trade sanctions was excluded from the statute of limitations period, Bulgartabac would still not have filed its complaint in a timely fashion. The court takes judicial notice of the fact that United Nations sanctions against Iraq began on August 6, 1990, *Security Council Votes 13 to 0 to Block Trade with Baghdad; Facing Boycott, Iraq Slows Oil: The Iraqi Invasion; Pullout Demanded,* N.Y. TIMES, August 7, 1990, at A1, and ended on May 22, 2003, *Aftereffects: United Nations; Security Council Almost Unanimously Approves Broad Mandate for Allies in Iraq*, N.Y. TIMES, May 23, 2003, at A1. Bulgartabac could have demanded payment from Iraq both before and after U.N. sanctions were imposed. Bulgartabac sent its final invoice on April 24, 1989, beginning the statute of limitations period. It filed its complaint with this Court on July 22, 2008. In other words, even excluding the period during which Iraq was under U.N. sanctions from the statute of limitations period, Bulgartabac allowed six years, five months, and twelve days to elapse before filing its original complaint in federal district court (one year, three months, and twelve days prior to the beginning of sanctions on Iraq, and five years and two months after), longer than the six year New York statute of limitations governing contract disputes. N.Y. CPLR

202, 213 (McKinney 2008). As such, allowing Bulgartabac to amend its complaint would be futile, and Bulgartabac's request for leave to amend is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration and for leave to amend the complaint [26] is DENIED.

Dated: New York, New York
September 20, 2010

Richard J. Holwell
United States District Judge